# CHARLESTON.

A. J. LINDENBURG *v*. AMERICAN RAILWAY EXPRESS COMPANY.

Submitted April 13, 1921.   Decided April 19, 1921.

1.   CARRIERS—*Interstate Carrier Held Liable for Full Loss or Damage to Live Stock and Other Property Except Baggage, Unless Exoneration and a Limited Liability Based on a Declared or Agreed Valuation are Effected.*

Under the Act of Congress, passed Aug. 9, 1916, sec. 7976, Barnes' Federal Code, known as the "Second Cummins Amendment" to the Interstate Commerce Act, a common carrier is liable for the full actual loss, damage or injury to ordinary live stock received by it for shipment in interstate commerce, caused by it or any connecting carrier to which it is delivered, and for such loss, damage or injury to any other property so received, except baggage, unless, by the action of the Interstate Commerce Commission and itself, exoneration from such liability and adoption of a limited one based upon a declared or agreed value, are effected.   (p. 442).

88 W. Va.

2. SAME—*Carrier Liable for Full·Actual Loss, Unless Shipper's Written Declaration of Value or Agreement on Released Value be Taken, Notwithstanding Adoption by Interstate Commerce Commission of Regulations for Limited Liability for Filing of Rates by Carrier.*

·Even though the Interstate Commerce Commission, under the authority conferred upon it by said statute, has adopted and promulgated regulations by which such limitation of liability may be effected as to all property in interstate shipment, except ordinary live stock, and in compliance with such regulations, a carrier has filed and published, and put into effect, its tariffs and rules for maintenance of rates dependent upon value declared in writing by the shipper or agreed upon in writing as the released value of the property, approved by said commission, it remains liable for such full actual loss, damage or injury, in the case of any particular shipment, unless it takes from the shipper a written declaration of the value of the property, or a written agreement with him upon the released value thereof, signed by him. (p. 443).

3. SAME—*Receipt by Carrier Containing No Statement of Value Signed by Shipper Held Not to Relieve Carrier from Liability for Full Actual Value Even Though Rate Charged Same as Would.Have Been Charged Upon Minimum Value Under Interstate Commerce Rules.*

In such case the delivery to the shipper, of the receipt executed by the carrier, in which there is no statement of value signed by the shipper, does not relieve the latter from liability based upon full actual value, even though the rate charged for carriage of the property is the same as would have been legally charged upon the minimum value of the property, under the regulations and tariffs validly promulgated, posted and maintained. (p. 443).

4. SAME—*Second Cummins Amendment to Interstate Commerce Act not in Conflict Therewith When Interpreted to Require Receipt From Shipper in Declaring Value.*

So interpreted, said statute does not conflict with the provisions of the Interstate Commerce Act, inhibiting preferences and unjust discrimination, nor is it inconsistent with them or either of them. (p. 444).

Error to Circuit Court, Kanawha County.

Action by A. J. Lindenburg against the American Railway Express Company. Judgment for plaintiff, and defendant brings error.                    *Affirmed.*

*A. M. Hartung* and *Davis & Davis,* for plaintiff in error.
*Morgan Owen,* for defendant in error.

POFFENBARGER, JUDGE:

The judgment here involved stands upon the theory of liability of the plaintiff in error, for full value of property entrusted to it for transportation from Indianapolis, Ind. to Charleston, W. Va., and lost in shipment, by reason of failure on its part to comply with provisions of the federal statute, authorizing express companies to limit their liability, on the basis of declared or agreed value, and known as the "Second Cummins Amendment." Barnes' Fed. Code, sec. 7976. The issues of fact were tried by the court in lieu of a jury and the substance of the evidence was made a part of the record.

The shipment consisted of two trunks weighing, respectively, 200 pounds and 100 pounds and a 10 pound package. On delivery at Charleston, the 200 pound trunk was in bad condition, some of the goods in it having been totally destroyed and others badly damaged by water, in some way. As proved and found by the court, the damages amounted to $916.15. On the theory of compliance with the law and validity of the tariff regulations and receipt given, the defendant admitted liability in the sum of $110.00, tendered that amount and denied liability for anything more.

The charges paid were such in amount as would have corresponded with a declared or released value of 50 cents per 100 pounds, the ordinary or basic value of property, with some exceptions, as fixed for purposes of transportation by the Interstate Commerce Commission regulations, and the uniform receipt prescribed by that commission, in the absence of a specification of a higher value. The receipt given the shipper, however, was not in the form of the uniform receipt so prescribed and in use, at the time of the shipment. It was an old form in use under former law, known as the "First Cummins Amendment" or the "Carmack Amendment." It absolved the company from loss or damage by default or negligence occurring beyond its own lines and contained no ·

declaration or release of value in writing, signed by the shipper, which the law in force at the date of the shipment required.

It is unnecessary to inquire and determine whether the plaintiff in error had been specifically or expressly authorized by the Interstate Commerce Commission, to avail itself of the law authorizing limitation of its liability; since we are clearly of the opinion that, if authorized so to do, it omitted to avail itself of the right of limitation, in respect of the shipment in question, by its failure to comply with the regulation provided for effectuation thereof.

Having declared that all common carriers engaged in interstate commerce should be liable for the full actual loss, damage or injury to property received by them for transportation in such commerce, occurring on their own lines or those of connecting carriers, the statute provides for partial limitation of such liability, as to some kinds of property, under certain circumstances. In the case of ordinary live stock, there can be no limitation. Liability for such full value does not apply to baggage. Nor does it apply to any other property, save ordinary live stock, that the Interstate Commerce Commission may see fit, in the exercise of its discretion and powers, to require or authorize to be carried upon rates dependent upon "the value declared in writing by the shipper or agreed upon in writing as the released value" thereof. In other words, no property can be carried upon such rates and under such a limitation, except baggage and such other property as the Commission requires or authorizes to be so carried. When there is an acceptance of property that has been required or authorized to be so carried and the value thereof has been so declared or agreed upon, the liability of the carrier is limited to such value.

Under the authority thus conferred upon it, the Interstate Commerce Commission has authorized all property other than ordinary live stock, to be carried at rates dependent upon such declared or agreed values and limited liability. That the property involved here could have been so carried is beyond doubt, and it also falls within the class authorized to

be carried on a value not exceeding $50.00 for a shipment of 100 pounds or less, or not exceeding 50 cents per pound actual weight for a shipment in excess of 100 pounds, unless a greater value is declared or agreed upon in writing.

For some reason presumptively found in necessity or expediency, the statute requires the declaration or agreement as to value to be made in writing, or rather does not authorize carriage under limited liability, nor the Commission to provide for it, except upon a written declaration or agreement as to value. In its prescription of the uniform receipt, the Commission has observed this requirement, by providing spaces for the value and the signature of the shipper. It has also interpreted the statute as requiring the carrier to give the shipper an opportunity to elect what value he shall declare, whether that specified in the classification for use in the absence of a declaration of any other, or some higher valuation imposing upon him a higher rate for transportation. In other words, the receipt contemplates a declaration of value by the shipper or an agreement with him upon the value in every instance. This seems to be the only interpretation of which the statute is fairly susceptible. It does not authorize either the Commission or the carrier to fix values. It says property may be authorized to be carried upon "rates dependent upon the value declared in writing by the shipper or agreed upon in writing as the released value of the property."

As, in this instance, the carrier did not take from the shipper a written declaration of value nor a written agreement as to value, signed by him, it failed to place itself within the requirements of the statute and the regulations of the Interstate Commerce Commission prescribed thereunder. In other words, it did not comply with the conditions precedent to its right to carry the property under a limitation of liability. It should have given him a receipt specifying a value fixed by himself, and evidenced by his signature. In doing so, it would have given him the option as to value contemplated by the law. In failing to do so, it denied him that option. Besides, it neglected to avail itself of the right conditionally

conferred upon it by the statute and the regulations, by its failure to take his written declaration or agreement as to value. A writing not signed by him, although specifying value, was not a declaration or agreement in writing by him.

Preparation and promulgation of regulations by the Interstate Commerce Commission and the posting of tariffs by the carrier, conforming to such regulations, do not alone limit the liability in any particular case. Although they may be constructive notice to the shipper, the carrier's liability stands on the basis of full actual value, unless limited in the manner prescribed. Such limitation cannot be affected in any other way. *McCormick* v. *Southern Express Co.*, 81 W. Va. 87. As the provision now under consideration was not in the "Carmack Amendment" nor the "First Cummins Amendment," the decisions interpreting and applying them, relied upon in the argument submitted for the plaintiff in error, are not applicable. In *American Express Co.* v. *U. S. Horse Shoe Co.*, 244 U. S. 58, decided under the present law, the shipper signed the written valuation. In *Boston and Maine R. Co.* v. *Piper*, 246 U. S. 439, the bill of lading contained an illegal limitation upon which the carrier relied in its defense.

This interpretation does not permit discrimination and preferences forbidden by secs. 7885 and 7886, Barnes' Federal Code, secs. 2 and 3, ch. 104, Act February 4, 1887. All of these provisions must be read together. What is authorized by one of them is not forbidden by any other. They are not irreconcilably repugnant. The terms of the section inhibiting preferences are very general. They do not enumerate or define preferences. What another statute legalizes cannot be deemed to be an undue or unreasonable preference. The Cummins Amendment contemplates and expressly imposes liability on the basis of full actual value, unless the carrier limits it to a different basis, by compliance with certain conditions. If, in a practical sense, this statute works discrimination, it is not an illegal discrimination. Unjust discrimination is different treatment of persons of the same class, under like or similar conditions. For the difference in treatment of shippers so effected, there is ample basis in the

difference in circumstances.  A shipper who has been denied a right which the law requires the carrier to extend to him, respecting the rate he shall pay and the extent of its liability to him, occupies a substantially different position from that of one to whom such right has been accorded.  That difference constitutes firm ground for classification in legislation.  The purpose of the statute is to give the shipper right in every case to hold the carrier to liability on the basis of actual value, if he desires to do so; but, to avail himself of such right, he must state such value in money in his declaration or agreement and pay charges based thereon.  To effectuate this purpose and adequately guarantee such right to him, it has been deemed necessary to require the carrier, in every instance, to allow him an opportunity to elect what value he will place upon his property, by taking his statement as to it, writing it in the receipt and requiring him to sign it.  Imposition of this duty upon both parties prevents the carrier from fixing the value itself in the great majority of cases, as it did under the ''First Cummins Amendment.'' Hence, the provision is a vital one and stands upon considerations of very great importance.

Upon these principles and conclusions the judgment complained of will be affirmed.

*Affirmed.*