MILDRED LOEB, Individually and as Trustee for CAROL LOEB and WILLIAM LOEB, and HARRY RUBENSTEIN, Copartners Doing Business under the Name of STARLET UNDERWEAR Co., Appellants, *v.* FRIEDMAN'S EXPRESS, INC., et al., Respondents.

Supreme Court, Appellate Term, First Department, July 11, 1946.

*Joseph Greenhill* and *Simon Greenhill* for appellants.

*Joseph Haskell* for respondents.

SHIENTAG, J.   The question presented on this appeal is whether an interstate motor carrier has effectively limited its liability for loss of merchandise transported by it.   The merchandise, shipped in interstate commerce, was stolen from the carrier, the defendant Friedman's Express, Inc.   The plaintiffs, consignees, sued for the sum of $1,980, the full value of the stolen merchandise.   Concededly the defendant insurance company is liable equally with the carrier.   The defendants resisted the claim on the ground that the carrier had duly limited its liability, as it was permitted to do by statute.   The court below sustained this defense and limited plaintiffs' recovery to the sum of $286.   From that judgment the plaintiffs have appealed to this court.

A bill of lading was issued by the carrier and received and signed for by the shipper.   The bill of lading contained the legend: '' Received, subject to the classifications and tariffs in effect on the date of the issue of this bill of lading.''

It also contained the following:

" *Note* — Where the rate is dependent on value shippers are required to state specifically in writing the agreed value of the property.

" The agreed or declared value of the property is hereby specifically stated by the shipper to be not exceeding $..........  per .........."

The foregoing blanks were not filled in. The charges were not prepaid and it is fairly to be assumed from the evidence that a bill for the carriage charges was not rendered to the plaintiffs until a date subsequent to the shipment and notice of loss.

Subdivision (11) of section 20 of the Interstate Commerce Act (U. S. Code, tit. 49, § 20, subd. [11]) governs the question of liability in the present case. That section imposes a rule of full liability, notwithstanding any limitation of liability or agreement as to value, with certain carefully defined exceptions. The exception involved in the present case relates to property concerning which the Interstate Commerce Commission has authorized or required the carrier " to establish and maintain rates dependent upon the value *declared in writing by the shipper or agreed upon in writing as the released value of the property* * * *." (Italics ours.)

In the present case the commission authorized the establishment of rates dependent on value, and the appropriate tariff schedules were duly filed and published. These tariffs established a released valuation of fifty cents per pound (with a $50 minimum) on shipments for which the minimum rate was charged, and provided a charge for shipments involving higher declared values at the rate of ten cents for each $100 of value in excess of the released valuation.

The controversy is as to the italicized portion of the section above set forth, i.e., whether there was a value declared in writing by the shipper or agreed upon in writing. The meaning of that language has frequently been the subject of judicial determination.

In the laudable desire to secure uniformity of application, the courts have placed a liberal construction upon the requirement in controversy. In the leading case of *Amer. Ry. Exp. Co.* v. *Lindenburg* (260 U. S. 584) the receipt given by the carrier to the shipper stated that in no event " shall this Company be held liable or responsible, nor shall any demand be made upon it beyond the sum of fifty dollars upon any shipment of 100 lbs. or less, and for not exceeding 50 cents per pound upon any shipment weighing more than 100 lbs., and the liability

of the Express Company is limited to the value above stated unless the just and true value is declared at time of shipment, and the declared value in excess of the value above specified is paid for, or agreed to be paid for, under this Company's schedule of charges for excess value.'' In that case the charges paid were on the basis of the limited liability set forth in the receipt.

The lower court had held for the shipper, saying that there had to be '' a receipt specifying a value fixed by himself * * *.'' (*Lindenburg* v. *Ry. Express Co.*, 88 W. Va. 439, 443.) The Supreme Court, however, rejected this conclusion and held that the limitation of liability was effective. The court said (pp. 591–592): '' The respondent, by receiving and acting upon the receipt, although signed only by the petitioner, assented to its terms and the same thereby became the written agreement of the parties. * * * Having accepted the benefit of the lower rate dependent upon the specified valuation, the respondent is estopped from asserting a higher value. To allow him to do so would be to violate the plainest principles of fair dealing.''

In *Caten* v. *Salt City Movers & Storage Co.* (149 F. 2d 428), the case was tried upon the premise that no bill of lading or receipt was issued and delivered to the shipper. The court held (p. 432): '' Unless the carrier can comply with the requirements of the statute merely by putting into writing what the shipper has told it orally and then keeping that writing without giving the shipper a chance to verify it and acquiesce in it if found correct or to repudiate it if found incorrect, there was no compliance shown here. Obviously no such loose interpretation of the statute is permissible. It seems plain that nothing was done by these shippers in writing, or in respect to any writing, which had anything whatever to do with a valuation of their property for shipment under one rate or any other. Everything they did in connection with that matter was done orally. To permit a carrier, without any action whatever by the shipper in respect to valuation in writing, to limit its liability on the basis of declared or released value on which the rate was charged would be to ignore entirely the statutory requirement that the shipper must make the declaration or agreement in writing, and nullify that part of the proviso.''

The *Caten* case (*supra*) is not to be construed as a modification of the *Lindenburg* decision (260 U. S. 584, *supra*). Indeed, the *Lindenburg* case is cited in the *Caten* opinion (*supra*) in connection with the following statement (p. 432): '' Receipt of the writing by the shipper and his action upon it are adequate

proof that he has assented to its terms and has made it the written agreement of the shipper and carrier.''

In *Kaufman* v. *Pennsylvania R. Co.*, Appellate Term, First Department, February 1946 Term (N. Y. L. J., April 5, 1946, p. 1342, col. 3, leave to appeal to Appellate Division denied by Appellate Term, N. Y. L. J., April 30, 1946, p. 1684, col. 1, and by Appellate Division, N. Y. L. J., June 8, 1946, p. 2279, col. 2), this court was confronted with still another aspect of the controversy. There the bill of lading was signed by shippers and carrier; the freight charges were prepaid by the shippers and were written in on the face of the bill of lading in the prepaid section thereof, as follows: '' Received $2.20 to apply in prepayment of the charges on the property described therein.'' The bill of lading stated that the property was '' Received subject to the classification and tariffs in effect on the date of the receipt by the carrier of the property * * *.'' The freight classification that was applicable to the shipment involved contained the five possible rates under which such a shipment could be transported, those rates being graduated according to the released values as set up in the classification. The lowest rate carried with it the released value '' not exceeding 10¢ per pound.'' This rate was concededly the $2.20 which was written in on the bill of lading and paid by the plaintiffs at the time the shipment was made. If the shipper stated a higher released value than ten cents per pound, the freight rate would have been progressively higher for each of the five alternatives provided in the classification. The shipper contended that the defense of limitation of liability was not open to the carrier because the released value of the shipment was not specifically written in dollars and cents on the face of the bill of lading. In other words, the plaintiff's position in the *Kaufman* case (*supra*) was that unless the value of the property was specifically stated by the shippers, there could be no agreed value applicable to the shipment. The court held, EDER, J., dissenting (the writer of the present opinion did not sit on the case), that there was an effective limitation of liability by which the shipper was bound. As I interpret the decision of this court, based upon the facts involved, the *Kaufman* case (*supra*) stands for the proposition that the value declared in the writing which is required by the statute may be found in the written acceptance of a rate; in other words, the shipper is presumed to know the rate-value relationship (*Kansas Southern Ry.* v. *Carl*, 227 U. S. 639, 656), and a statement in writing on the bill of lading of the charge for the shipment is deemed to be a

written declaration of value. The Appellate Division denied leave to appeal, an action which has some significance, although it is no indication that the higher court agreed with the determination below (*Matter of Marchant* v. *Mead-Morrison M. Co.,* 252 N. Y. 284, 297–298).

While the decision in the *Kaufman* case (*supra*) is binding on this court, I believe that it may be distinguished from the present case in important respects. Here the charges constituting the freight rate were not entered in writing on the bill of lading, nor were those charges prepaid by the shipper. It could not be said, therefore, that having accepted the benefit of the lower rate dependent upon a specified valuation, the shipper is estopped from asserting a higher value; nor could it be said in this case, even on the basis of a presumption of knowledge on the part of the shipper of the rate-valuation relationship, that there was anything in writing on the bill of lading to constitute an agreement as to valuation.

In order to sustain a limitation of liability in this case we should be obliged to go beyond the earlier cases and to hold that where a bill of lading in the form here used, received by the shipper and signed by him, contains a legend calling for the declared value to be stated by the shipper, which value is not inserted, that in itself is tantamount to a declaration in writing of the value of the shipment on the basis of the minimum tariff. The statutory language has no such meaning.

Liberality in the construction of a statute such as is here involved may be desirable, but that process may not be stretched to the point of disregarding its plain provisions. In the guise of judicial construction a court should not rewrite a statute. The judgment below is accordingly modified by increasing it to the sum of $1,980, the full value of the lost shipment, with interest and costs, and as modified affirmed, with costs.

EDER, J., concurs with SHIENTAG, J.; HAMMER, J., dissents in the following memorandum: I dissent upon the authority of *Kaufman* v. *Pennsylvania R. Co.* (47 N. Y. S. 2d 639, affd. N. Y. L. J., April 5, 1946, p. 1342, col. 3), *Lewis* v. *Acme Fast Freight, Inc.* (N. Y. L. J., Nov. 3, 1944, p. 1162, col. 5) and *Amer. Ry. Exp. Co.* v. *Lindenburg* (260 U. S. 584).

Judgment accordingly.